## STALEY vs. KNEELAND.

Usury consists in a corrupt agreement for a loan at more than seven per cent. interest.

Obligations for the payment of money upon bona fide consideration, may be purchased of the obligee by a third person at less than their face, and the purchase will not be usurious.

So an obligor may purchase his own obligation from the person to whom he has executed at less than its face, and such purchase will not be usurious, provided such purchase is bona fide and not connected with any previous agreement so to purchase.

Such purchase would be usurious if coupled with an agreement or understanding so to do, made before the execution of the obligation.

When a cause comes on to be heard upon bill and answer, and the answer denies fully the usury charged, the complainant's bill will be dismissed.

THIS is a bill filed to set aside a mortgage executed by the complainant to the defendant, June 29th, 1837, for $1585 25 on the ground of usury. The circumstances attending the execution of this mortgage are as follows: Prior to Nov. 21, 1835, the defendant, upon application of the complainant, had loaned to the complainant divers sums of money at different times, and taken his notes for the repayment thereof with interest, as the sums were advanced. On the 21st Nov. 1835, a settlement was had between the parties, and the amount due upon these notes with interest amounted to $736 75, when the complainant executed to the defendant a bond and mortgage for $1236 75, payable in one year with interest. The defendant at that time surrendered the old notes, and executed to the complainant his note for $500, payable in one year with interest, which the complainant wanted to use for the payment of his debts. Before the year expired the

complainant applied to the defendant for advances upon this note, and offered to allow him a large interest upon the moneys so advanced. The defendant did make such advances from time to time, and as each advance was made, endorsements were made on the note larger than the advances. In this way the whole note was taken up, or purchased by the defendant within the year, and before it became due, and the interest or discount allowed upon such advances was from twenty-one to twenty-four per cent. When the mortgage became due the complainant borrowed more money of the defendant, and gave his notes for the same. Nov. 28, 1836, a settlement was had of such advances and the interest thereof, and the amount due on the first mortgage and the interest thereof, and the complainant on that day executed a new mortgage to the defendant for such agregate amount, being $1465 12 with interest, payable at no specified time. After this the defendant made further advances to the complainant, and took his notes therefor; and on the 29th June 1837, the complainant executed a new mortgage to the defendant for the amount of the last mortgage with interest, and of the new advances with interest, payable with interest on the 1st November, 1837. All the mortgages except the last were given up and cancelled. The complainant files his bill to set aside this last mortgage, on the ground of usury in the first notes, and usury pursuant to an agreement to make advances upon the $500 note. The defendant's answer denies all usury, and denies any agreement whatever to make advances upon the $500 note previous to its execution. The case comes on upon bill and answer.

*G. H. Chapin,* for complainant.

*M. Taggart,* for defendant.

THE VICE CHANCELLOR. This cause comes on to be heard on bill and answer; and therefore all the facts and allegations of the answer must be taken as true.

1st. Was there usury in the first mortgage.

The fact of usury depends upon the terms of the agreement of the loan. The answer denies that there was usury in any of the transactions previous to this mortgage; and this mortgage was executed to secure the amount of those previous transactions, and a note given at the same time by the defendant to the complainant. This note was a part of the consideration of the mortgage; and there was at that time no agreement, whatever, that the defendant should afterwards, from time to time, advance moneys or payments upon this note at an usurious rate.

This mortgage was therefore valid in its inception. The complainant was afterwards pressed for money, and applied from time to time to defendant to advance money upon his note, which sums were advanced, and endorsements upon said note made at the time of such advances of sums greater than the amount advanced, so that in the end the defendant bought his own note at a discount, by which he realized more than seven per cent. for his money. If this purchase had been made in pursuance of any previous arrangement or understanding, it would clearly have made the whole mortgage usurious. But as the note was valid in its inception, any person might have purchased it at a discount; and I can see

no good reason why the maker himself may not do
so. Indeed, this principle seems to be clearly recog-
nised in Vroom vs. Ditmas, 4 Paige, 526. The
purchase of the note by the defendant, was not a
transaction of borrowing and lending, upon which
alone usury can be predicated, but was a purchase
of a chose in action. If the defendant had originally
turned out a perfectly good note, of the same amount
and character, against any other person, and had af-
terwards purchased it back, there could be no doubt
I think about the legality of the transaction. Can
it make any difference that the note was the defend-
ant's? This circumstance might in either case have
been good ground for suspicion that the whole was
intended as a cover for usury; but the case comes
up here on defendant's answer, which rebuts any
such presumption, and which must be taken as true.

2. If the first mortgage was valid in its inception,
it seems to me the subsequent mortgages are clearly
so. The consideration of the second mortgage is
the first mortgage, and an additional sum of money.
So of the third mortgage. The $500 note is not a
part of the consideration of the second mortgage, ex-
cept so far as it went into the consideration of the
first mortgage, and at the inception of the first mort-
gage we have considered that valid.

If a third person had purchased the $500 note at
a discount, of the complainant, and at the maturity
of the note and the mortgage, had purchased the
mortgage of the defendant, (for which he would have
paid part by his, the defendant's note,) and then upon
the advance of more money, taken a new mortgage
for the whole, would such new mortgage have been
usurious in the hands of such third person? It seems

to me it would not. The only contract he would in such case have made with the complainant, out of which he would have realized more than seven per cent. would have been a contract of purchase. There would have been no borrowing and lending at an usurious rate. Such third person would be in no different position from the defendant.

I shall, therefore, hold the bond and mortgage valid; neither can I make any deduction on account of the discount on the $500 note.

If the note had been the sole transaction, and the defendant had taken it up in the way stated, it is clear that the complainant could not have sued him for such discount. And to test the question of usury as connected with that note, could the complainant, under the statute, have recovered the excess as usurious? It seems to me that in every point of view, in which the question is placed, applying the settled rules of law to the case, the bond and mortgage in the defendant's hands must be deemed to be valid, and he be entitled to collect the whole amount thereof.

NOTE.—The decision in this cause was affirmed on appeal to the Chancellor.